**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN BROOKINS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  24-470** |
| | : | |
| **THE CITY OF PHILADELPHIA,** | : | |
| **JOHN DOE #1, P.O. HARRIS, P.O.** | : | |
| **KUBLER, SGT. CONAWAY, P.O.** | : | |
| **CLAIR, SERGEANT RODDEN, P.O.** | : | |
| **STAUFFER, LT. SEAMEN, P.O.** | : | |
| **TAYLOR, P.O. SQUARES, DET.** | : | |
| **WALSH, SGT. DOUGHERTY,** | : | |
| **INSPECTOR SINGLETARY, CAPT.** | : | |
| **LUCA, CAPTAIN DABLASIS,** | : | |
| **INSPECTOR BACHMEYER, P.O.** | : | |
| **RIOTTO, P.O. HARRIS** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                          **April 30, 2024**

We return to the use of cell phones and social media posts after a tragic event. What we capture and why is left to our good sense including a hope we respect each other. We echo the constitutional teaching of being mindful of the time, place, and manner of our expressive conduct. We today study a mother's claims for damages arising from a police officer taking and posting a picture on social media of her son after he jumped off a bridge to his tragic death following a mental health emergency. The officer allegedly did not need the photo for an investigation. We have no idea why the officer would then post this tragedy on social media. A gas station attendant showed the mom the picture of her deceased son (without knowing their relationship) fifteen days after her tragedy from a social media post. The mom suffered time and time again. She seeks damages from the officer and employer City. We find she states a Fourteenth Amendment privacy claim against the City and an officer or officers to be determined in discovery.

## I.    Alleged facts

Karen Brookins's son, Marcus Boone, stood on top of an overpass bridge on I-95 in northeast Philadelphia as he suffered a severe mental health episode on March 18, 2022.[1] Philadelphia Police officers arrived at the scene and formed a perimeter.[2] The responding officers included Officer Harris, Officer Kubler, Sergeant Conaway, Officer Clair, Sergeant Rodden, Officer Stauffer, Lieutenant Seamen, Officer Taylor, Officer Squares, Detective Walsh, Sergeant Dougherty, Inspector Singletary, Captain Luca, Captain Dablasis, Inspector Bachmeyer, Officer Riotto, and Officer Harris.[3] Police interacted with Mr. Boone for approximately three hours before he tragically jumped from the bridge taking his own life.[4]

Immediately following Mr. Boone's death, an unidentified Philadelphia Police Officer used his personal phone to take a photograph of Mr. Boone's deceased body lying on the street below from the vantage point of where he jumped.[5] The Officer did not take the photograph for purposes of investigation.[6] The Officer texted and shared the photograph on social media, including Facebook and the Citizen application.[7]

Social media users viewed the photograph thousands of times and circulated it broadly across text message and social media platforms.[8] Complete strangers, including a Sunoco gas station attendant named Frank who did not know Mr. Boone or his relation to Ms. Brookins, showed the photograph to Ms. Brookins on April 6, 2022.[9] Ms. Brookins has since suffered sleeplessness, anxiety, depression, and post-traumatic stress disorder.[10] Ms. Brookins also suffered "pain and debilitating worry…other family members may see the photographs as well."[11] Ms. Brookins treats with a therapist and a grief counselor for her mental anguish.[12]

Ms. Brookins sued the City and a series of John Doe officers since the City nor she presently know the officer who took and posted this picture but the parties agree as to the identity

of the officers at the scene who could possibly have taken the picture. Ms. Brookins alleges a John Doe officer present at the scene of her son's death violated her Fourteenth Amendment privacy rights by taking and sharing photographs of her son's deceased body after he jumped from a bridge on I-95 in northeast Philadelphia. Ms. Brookins brings a section 1983 municipal liability claim against the City for failure to maintain policies or training regarding the privacy rights of family members with respect to photographing or sharing photographs of deceased individuals. Ms. Brookins also sues for intentional infliction of emotional distress.

## II.    Analysis

The City and the named Officer Defendants now move to dismiss the amended Complaint arguing Ms. Brookins fails to state a Fourteenth Amendment privacy claim because (1) Ms. Brookins does not have a Fourteenth Amendment privacy interest in a photograph of her deceased son, and (2) Ms. Brookins does not allege the personal involvement of any specific police officer. The City argues Ms. Brookins fails to establish municipal liability because she does not plead facts of a municipal policy or custom as required by *Monell*, she does not allege conduct by a municipal policymaker, and she does not identify any prior instances or patterns of misconduct to support a failure-to-train or failure-to-discipline claim. The Officer Defendants argue they are immune from Ms. Brookins's intentional tort claim under the Pennsylvania Political Subdivision Tort Claims Act.

Ms. Brookins counters: (1) she has a Fourteenth Amendment right to privacy in the death images of her son, (2) her allegations each individual Officer Defendants committed the same unlawful acts is sufficient to establish personal involvement at this stage, (3) the Officer Defendants are not immune from suit for intentional infliction of emotional distress because the officer who took the photograph of Mr. Boone acted outside of the scope of his duties, and (4) she

does not need to establish a pattern of misconduct to state a failure-to-train claim where the need for training is obvious.

We return to bedrock civil rights law. Congress provides a mechanism for enforcing individual rights secured by the Constitution or federal laws. Congress, through section 1983, allows private citizens to bring an action for violations of federal law committed by state actors.[13] To state a claim under section 1983, Ms. Brookins must allege a person acting under color of state law deprived her of a right secured by the Constitution or laws of the United States.[14] The question is whether Ms. Brookins can now proceed while both parties await the completion of an internal police investigation into which of the sued officers took her son's picture.

We deny the Officer Defendants' and the City's motion to dismiss. Ms. Brookins states a Fourteenth Amendment privacy claim against the Officer Defendants in their individual capacities for taking and circulating the photograph of her deceased son. Ms. Brookins states a *Monell* claim against the City based on her allegations the City failed to train its officers in the privacy rights of family members with respect to photographing and circulating photographs of deceased individuals. Officer Defendants are not immune from liability for Ms. Brookins's claim for intentional infliction of emotional distress based on her allegations the Officer Defendants engaged in willful misconduct.

A.   **Ms. Brookins pleads a Fourteenth Amendment privacy claim against Officer Defendants.**

Ms. Brookins alleges Officer Defendants violated her Fourteenth Amendment privacy rights by taking and sharing photographs of her son's deceased body after he took his own life. The Officer Defendants and the City argue "[a] photograph of a crime scene depicting the image of an individual's deceased son is not the type of confidential information that is protected by the 14th Amendment" because it is the image of another person's body instead of one's own body.[15]

Ms. Brookins plausibly alleges a Fourteenth Amendment privacy claim against Officer Defendants.

### 1.    Ms. Brookins may proceed against the Officer Defendants in their individual capacities.

To plausibly state a claim against Officer Defendants under section 1983, Ms. Brookins must show Officer Defendants acting under color of law deprived her of a constitutional right. Ms. Brookins alleges Officer Defendants were each "acting under color of law and within the scope of [their] employment pursuant to the statutes, ordinances, regulations, policies, customs, and practices of the City of Philadelphia and the Philadelphia Police Department."[16] Ms. Brookins plausibly alleges Officer Defendants are state actors.

It is unclear whether Ms. Brookins sues the Officer Defendants in their individual or official capacities. If Ms. Brookins intends to sue the Officer Defendants in their official capacities, the claim fails. State actors sued in their official capacities for money damages are not "persons" who can be sued under section 1983.[17] Any claims against Officer Defendants in their official capacities are dismissed.

Ms. Brookins's claims against Officer Defendants must be brought in their individual capacities. Individual liability can be imposed under section 1983 only if a state actor has personal involvement in the alleged constitutional violation.[18] Section 1983 liability cannot be based "solely on the operation of respondeat superior."[19] The City and Officer Defendants argue Ms. Brookins's claims fail because she "merely recites a laundry list of Officers, alleging all or any one of them may have engaged in the specified conduct."[20] Ms. Brookins responds the pleadings are sufficient to give fair notice to Officer Defendants of the claims against them and the grounds upon which they rest. Ms. Brookins's allegations are more than sufficient to proceed into discovery to determine the identities of the officers involved.

Ms. Brookins must comply with Federal Rule of Civil Procedure 8 requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[21] We are guided by Judge Pratter's decision in *Wright v. City of Philadelphia*, in which Mr. Wright sued the Philadelphia Police Department and eleven individual officers under section 1983 for alleged misconduct resulting in his conviction.[22] Defendants moved to dismiss the complaint on the basis Mr. Wright did not establish the personal involvement of three individual detectives because he did not make allegations specific to those detectives. Judge Pratter rejected this argument: "While Mr. Wright will ultimately have to prove that each individual defendant violated his constitutional rights to survive summary judgment or succeed at trial, at this stage of the case, before the completion of discovery, it is sufficient for a plaintiff to identify a sub-group of defendants as responsible for particular, stated constitutional wrongs."[23] Judge Pratter found Mr. Wright's allegations were sufficient to establish personal involvement at the motion to dismiss stage because he alleged each of the detectives was personally involved, either individually or "as part of a descriptively defined subgroup of defendants," in the alleged conspiracy to frame Mr. Wright.[24]

We are also guided by Judge Pappert's decision in *Bravo v. City of Philadelphia*.[25] Mr. Nunez died by suicide in prison. His sister and administrator of his estate Ms. Bravo sued the City, officials, and a number of entities who contracted with the City to provide mental health care and services in the Philadelphia prison system for violating Mr. Nunez's Eighth and Fourteenth Amendment rights to adequate medical care and protection from the risk of suicide.[26] Ms. Bravo knew and identified in her complaint the health care providers who participated in the decisions leading up to Mr. Nunez's suicide but she did not know which entities made which decisions. Defendants moved to dismiss arguing Ms. Bravo made "collective references to multiple

individual Defendants" but did not specifically identify the roles of any of the individual defendants.[27]

Judge Pappert denied the motion to dismiss reasoning Ms. Bravo alleged enough facts to state a plausible claim because she alleged the health care providers' awareness of her brother's mental health issues and history of suicide attempts, and she provided detailed facts of the treatment decisions and events leading up to her brother's death. Judge Pappert reasoned these allegations are sufficient at the motion to dismiss stage because Ms. Bravo "has leveled these allegations against the individuals potentially responsible, pending discovery" and "[a]rguments concerning individual defendants' personal involvement can be addressed, if necessary, at summary judgment."[28]

Ms. Brookins did not witness the incident giving rise to her claims and she does not know the extent of each officer's involvement in circulating the image of her deceased son. The City represents it does not today know the identities of the officers involved in taking the photograph as this information is protected pending the outcome of the Department's internal affairs investigation. The City provided Ms. Brookins the names of the officers at the scene, who she then sued. Ms. Brookins, like Ms. Bravo, levels her allegations against all officers potentially responsible for the alleged conduct and provides a detailed factual account of the events leading up to and following her son's death. Ms. Brookins's allegations identifying a sub-group of officers potentially responsible for alleged constitutional wrongs are sufficient at this stage. Her allegations, like those of Mr. Wright, are more than enough to put the individual Officer Defendants on notice of the nature and basis for her claims because she alleges *each* officer personally took the photograph of Mr. Boone's body and circulated it via text and social media platforms.[29] Ms. Brookins will ultimately have to prove each officer's personal involvement to

proceed at trial but it is sufficient at this stage for her to identify a sub-group of officers potentially responsible for the alleged conduct.

Ms. Brookins may proceed against Officer Defendants, state actors, in their individual capacity. We must now determine if Ms. Brookins plausibly alleges a deprivation of a constitutional right.

### 2. Ms. Brookins plausibly alleges a Fourteenth Amendment privacy interest in her son's death images.

Ms. Brookins alleges Officer Defendants violated her Fourteenth Amendment privacy rights by taking and sharing photographs of her son's deceased body after he died by suicide. "The Fourteenth Amendment right to privacy shields individuals from unwarranted governmental intrusions into their personal lives."[30] Our Court of Appeals recognizes "the right not to have intimate facts concerning one's life disclosed without one's consent" as rooted in the Fourteenth Amendment.[31] Ms. Brookins's claim for violating her privacy rights under the Fourteenth Amendment is a substantive due process claim.[32] Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'"[33]

"The touchstone of constitutional privacy protection is whether the information at issue is 'within an individual's reasonable expectations of confidentiality.'"[34] "[T]he 'federal constitution . . . protects against public disclosure [of] only highly personal matters representing the most intimate aspects of human affairs,' thereby shielding from public scrutiny 'only that information which involves deeply rooted notions of fundamental personal interests derived from the Constitution.'"[35] "The more intimate or personal the information, the more reasonable the expectation is that it will remain confidential."[36] "Privacy claims under the Fourteenth Amendment

necessarily require fact-intensive and context-specific analyses, and unfortunately, bright lines generally cannot be drawn."[37]

The City and Officer Defendants argue there is no Fourteenth Amendment protection for Ms. Brookins in the dissemination of photographs of her son because the photograph "is not of her own body or personal information" and is "simply not the type of information contemplated as private by [] constitutional jurisprudence."[38] The City and Officer Defendants do not cite to case law in support of this position. Ms. Brookins counters the privacy right in images of deceased family members is "deeply rooted in our country's history and tradition."[39]

Ms. Brookins relies on our Supreme Court's decision in *National Archives and Records Administration v. Favish*.[40] Allan Favish filed a Freedom of Information Act request seeking official investigation photographs showing the death scene of President Clinton's deputy counsel Vincent Foster after five government investigations concluded he died by suicide. The Office of Independent Counsel refused the request and Mr. Favish filed suit to compel the Office to produce the photographs. Mr. Foster's family objected on grounds of personal privacy, relying on an exemption in the Act "which excuses from disclosure 'records or information compiled for law enforcement purposes' if their production 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"[41] The Court held family members have a personal privacy right in their close relative's death scene photographs under the Act.

The Court explicitly rejected Mr. Favish's argument Congress intended through the exemption to the Act to protect only the right to control information about oneself and not about a family member.[42] The Court held family members may seek protection of their own privacy interests under the exemption in the Act based on their right to control the deceased's body, reasoning Mr. Foster's family members seek "their own refuge from a sensation-seeking culture

for their own peace of mind and tranquility, not for the sake of Foster's reputation or some other interest personal to him."[43] The Court explained, "[W]e have little difficulty…in finding in our case law and traditions the right of family members to direct and control disposition of the body of the deceased and to limit attempts to exploit pictures of the deceased family member's remains for public purposes."[44] The Court reasoned "[i]t would be anomalous to hold in the instant case that the statute provides even less protection than does the common law" given the Court's recognition the privacy right stemming from the Act extends beyond the privacy right under common law and the Constitution.[45]

We are guided by our Supreme Court's reasoning in *Favish* and also have little difficulty in rejecting the Officer Defendants' and the City's argument Ms. Brookins only has the right to control information about herself. Although Ms. Brookins is seeking to control information about her son, she explicitly alleges she is seeking relief for her *own* piece of mind. Like Mr. Foster's relatives, Ms. Brookins invokes her Fourteenth Amendment privacy right alleging she seeks refuge from the online culture of sharing "salacious death photographs" with "gore-seeking individuals."[46] Ms. Brookins alleges she suffers sleeplessness, anxiety, depression, and post-traumatic stress disorder, and "debilitating worry…other family members may see the photographs as well."[47] Ms. Brookins's claim is based on her own privacy interests and not those of her son.

Our Court of Appeals has not addressed this privacy right in the context of the Fourteenth Amendment. But we are guided by the Court of the Appeals for the Ninth Circuit in *Marsh v. County of San Diego* addressing whether the common law privacy right in a family member's death images rises to the level of a constitutional privacy right under the Fourteenth Amendment.[48] Brenda Marsh sued the San Diego district attorney for sharing autopsy photos of her son's deceased body with a newspaper and television station. Ms. Marsh claimed she suffered severe

10

emotional stress when she learned the district attorney shared these photos with the press and lived in fear she would find the images on the internet given the viral nature of the internet.[49] Relying on our Supreme Court's reasoning in *Favish*, the court of appeals held Ms. Marsh had a constitutionally protected privacy right in the death images of her son because "the common law right to non-interference with a family's remembrance of a decedent is so ingrained in our traditions that it is constitutionally protected" by substantive due process.[50] The court of appeals reasoned "[f]ew things are more personal than the graphic details of a close family member's tragic death" because the images reveal the manner of death and the family member's suffering during his final moments which are "matters of private grief."[51]

Ms. Brookins, like Ms. Marsh, alleges strangers showed her the death image of her son causing her emotional distress and "debilitating worry" her other family members would see the images on the internet.[52] Ms. Brookins has a deeply rooted privacy interest in remembering and grieving her deceased son. Ms. Brookins plausibly alleges the officers took part in conscience-shocking behavior likely to cause Ms. Brookins profound grief by publicly sharing the tragic death images of her son on social media and through text. Ms. Brookins's allegations are sufficient to state a claim for relief.

We rely on guidance from our Supreme Court, the Court of Appeals for the Ninth Circuit, and our colleagues who have recognized a privacy right in a family member's death images.[53] We deny the motion to dismiss Ms. Brookins's Fourteenth Amendment claims against the Officer Defendants.

**B.    Ms. Brookins pleads the City violated her Fourteenth Amendment privacy rights under a theory of municipal liability.**

Ms. Brookins sues the City for damages resulting from the City's alleged failure to maintain policies or train its officers "regarding the privacy rights of family members in the context

of photographing or sharing photographs of deceased individuals."[54] Ms. Brookins plausibly alleges the City is liable for the alleged violation of her Fourteenth Amendment privacy rights by failing to train its officers in handling death scene images.

Ms. Brookins alleges the City caused the alleged violation of her constitutional privacy rights under the Fourteenth Amendment because it failed to maintain policies or training on taking and sharing the photographs of deceased individuals, despite knowing officers were likely to encounter such a situation, and "absent training were likely to violate the rights of family members of deceased persons."[55]

Under our Supreme Court's guidance in *Monell*, a municipality like the City of Philadelphia is not liable for the unconstitutional actions of its employees simply because of their employment.[56] "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."[57] To state a section 1983 claim against the City, Ms. Brookins must allege: "(1) [s]he suffered a constitutional violation and (2) the municipality caused that constitutional violation through a policy, a custom, or a failure to train or other inadequacy."[58]

"A municipality's failure to adequately train its employees gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an individual's civil rights, and is 'closely related to the ultimate injury.'"[59] A person ordinarily must allege facts signaling a pattern of violations to show the state actor's deficient training rises to deliberate indifference of an individual's civil rights.[60] But Ms. Brookins's claim may still proceed absent allegations of a pattern of violations under a "single incident" theory of liability. "[I]n certain situations, the need for training can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights even without a pattern of

constitutional violations."[61] "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights."[62]

The City argues Ms. Brookins cannot establish municipal liability because (1) she does not plead a municipal policy or custom, (2) she does not allege conduct by a municipal policymaker, and (3) she does not allege prior instances of misconduct to support a failure to train claim.

The City misunderstands Ms. Brookins's theory of liability. Ms. Brookins is proceeding on a single incident failure-to-train theory of municipal liability. Our Court of Appeals instructs Ms. Brookins does not need to establish a policy or a policymaker to support a failure-to-train claim.[63] And Ms. Brookins does not need to allege earlier instances or a pattern of misconduct to state a claim if she pleads the need for training the City's police officers in handling death scene photographs of deceased individuals is "so obvious," failure to do so constitutes "deliberate indifference" to citizens' constitutional rights.

Ms. Brookins relies on our Court of Appeals's decision in *Berg v. County of Allegheny* involving a single incident failure-to-train claim against Allegheny County based on a warrant clerk's clerical error prompting the police to arrest the wrong person.[64] Mr. Berg alleged police wrongfully arrested him based in part on the County's "failure to provide sufficient procedural or technical safeguards against errors such as the one that resulted in Berg's arrest."[65] Judge Ambrose granted summary judgment on Mr. Berg's municipal liability claim against Allegheny County. Our Court of Appeals reversed, finding an issue of fact remained as to whether the County was deliberately indifferent to an obvious risk. Our Court of Appeals likened the County's alleged failure to provide protective measures against the clerk's mistake to "a failure to equip law enforcement officers with specific tools to handle recurring situations."[66]

We are also guided by Judge Marston's analysis a year ago in *Alexander v. Bucks County*. Mr. Alexander sued Bucks County correctional officers under section 1983 for violations of his constitutional rights.[67] Mr. Alexander alleged Bucks County failed to adequately train correctional officers on the use of force with inmates with mental illnesses.[68] The County moved to dismiss the *Monell* claim arguing the County did not describe the nature of the County's training program or whether officers acted consistent with the program or policy.[69] Judge Marston reasoned Mr. Alexander is not required to plead details of the training program with specificity at the motion to dismiss stage.[70] "Instead, the complaint must identify the training program that the plaintiff believes is deficient, describe that deficiency, and explain how the deficiency caused the plaintiff's injuries."[71]

Judge Marston found Mr. Alexander satisfied this standard because he alleged the County had no use-of-force policy for officers encountering incarcerated people with mental illnesses despite its knowledge officers will regularly interact with incarcerated people with mental illnesses and at times officers will be required to use force on them. Judge Marston inferred the County's failure to train presents an "obvious risk" from the fact the facility places individuals with mental illnesses in a different unit than individuals without mental illnesses.[72]

Ms. Brookins identifies the allegedly deficient training program as the failure "to maintain any policies or training regarding the privacy rights of family members in the context of photographing or sharing photographs of deceased individuals."[73] Ms. Brookins's allegations point to a recurring situation of officers needing to respond to suicides, homicides, or accidents resulting in death. Much like Mr. Berg's allegations the County did not equip its clerks with the necessary tools, Ms. Brookins alleges the City did not equip officers with the tools necessary to respond to a recurring situation—death scenes—because it did not employ policies or training on

the privacy rights of family members of the deceased. Ms. Brookins need not detail with specificity the allegedly inadequate training at the motion to dismiss stage. The parties may explore in discovery the obviousness of the need for training and the risk presented by a failure to train.

We deny the City's motion to dismiss Ms. Brookins's municipal liability claim.

### C.   Ms. Brookins pleads a claim for intentional infliction of emotional distress against the Officer Defendants.

Ms. Brookins alleges the Officer Defendants' actions in taking and circulating the photograph of her son were "malicious" and "intended and did cause the extreme mental anguish and suffering of Plaintiff."[74] The City and Officer Defendants move to dismiss the intentional infliction of emotional distress claim arguing they are immune from liability under the Pennsylvania Political Subdivision Tort Claims Act. Ms. Brookins counters the statutory immunity defense is not available to the Officer Defendants because (1) they acted outside the scope of their duties, and (2) they engaged in willful misconduct. We deny the Officer Defendants' motion to dismiss Ms. Brookins's claim for intentional infliction of emotional distress.

The Pennsylvania General Assembly through the Pennsylvania Political Subdivision Tort Claims Act "bars claims against municipal employees unless his or her conduct constitutes a 'crime, actual fraud, actual malice or willful misconduct.'"[75] Ms. Brookins alleges the Officer Defendants acted with malice and with the intent to cause Ms. Brookins mental anguish.  Officer Defendants are not immune from liability for willful misconduct.[76]

Ms. Brookins's intentional tort claims are not barred by the Tort Claims Act because she plausibly alleges Officer Defendants engaged in willful misconduct.

### III.    Conclusion

We deny the Officer Defendants' and the City's motion to dismiss. We will now learn, among other things, why an officer would take and then post this tragedy on social media and if the Law allows Ms. Brookins a damages recovery.

---

[1] ECF No. 18 ¶¶ 1, 27.

[2] *Id.* ¶ 1.

[3] *Id.* ¶ 2. Both parties name an "Officer Harris" twice when listing the officers present on the scene. We treat these officers as different persons unless corrected.

[4] *Id.* ¶¶ 28–29.

[5] *Id.* ¶¶ 1, 30.

[6] *Id.* ¶ 31.

[7] *Id.* ¶¶ 1, 32.

[8] *Id.* ¶ 34.

[9] *Id.* ¶¶ 1, 35.

[10] *Id.* ¶ 36.

[11] *Id.*

[12] *Id.* ¶ 37.

[13] 42 U.S.C. § 1983.

[14] *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Section 1983 provides in relevant part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

[15] ECF No. 29 at 8.

[16] ECF No. 18, ¶¶ 9–25.

[17] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 69–71 (1989).

[18] *Addlespurger v. Corbett*, 461 F. App'x 82, 86 (3d Cir. 2012) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–77 (1976)). *See also Santos v. Sec'y of D.H.S.*, 532 F. App'x 29, 31 n.2 (3d Cir. 2013) (affirming dismissal of claims against the Secretary of the Philadelphia Department of Human Services because plaintiff failed to raise allegations of Secretary's personal involvement in the events at issue).

[19] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[20] ECF No. 29 at 12.

[21] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007).

[22] *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322 (E.D. Pa. 2017).

[23] *Id.* at 338.

[24] *Id.*

[25] *Bravo v. City of Philadelphia*, No. 22-5190, 2023 WL 6133171 (E.D. Pa. Sept. 19, 2023).

[26] *Id.* at *1.

[27] *Id.* at *3.

[28] *Id.* at *3–*4.

[29] The City's attempts to dismiss for lack of personal involvement are curious given the procedural history and the City unwilling to identify these persons under a continuing internal affairs investigation from an incident over two years ago. Ms. Brookins did not witness her son's tragic death. She has no independent means of identifying the officers present on the scene or involved in taking and circulating the photograph. Ms. Brookins proactively sought the identities of the officers through early discovery. The City could only provide her the names of the responding officers. Running up against the statute of limitations, Ms. Brookins amended her Complaint to add the names of all responding officers who plausibly engaged in the alleged misconduct. We accept (for today) the City's representation it cannot yet identify the officer or officers involved in

the alleged wrongdoing, but we caution the City against wielding this lack of information as a sword against Ms. Brookins.

[30] *Morton v. Lancaster Cnty. Prison*, No. 13-1306, 2014 WL 3953175, at *10 (E.D. Pa. Aug. 11, 2014), *aff'd sub nom.*, 618 F. App'x 136 (3d Cir. 2015) (citations and quotations omitted).

[31] *C. N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 179 (3d Cir. 2005) (quoting *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999)).

[32] *See Nunez v. Pachman*, 578 F.3d 228, 231 n.7 (3d Cir. 2009) ("The Supreme Court has recognized that notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives.").

[33] *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal citations omitted).

[34] *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (citing *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011), as amended (June 6, 2011)).

[35] *Id.* at 176 (citing *Nunez*, 578 F.3d at 232).

[36] *Id.* at 175.

[37] *Id.* at 176.

[38] ECF No. 29 at 8.

[39] ECF No. 28 at 4.

[40] 541 U.S. 157 (2004).

[41] *Id.* at 157 (citing 5 U.S.C. § 552(b)(7)(C)).

[42] *Id.* at 167.

[43] *Id.* at 158.

[44] *Id.* at 167.

[45] *Id.* at 170; *see United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762 n.13 (1989) ("The question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution.").

[46] ECF No. 18 ¶¶ 31–33.

[47] *Id.* ¶ 36.

[48] *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012).

[49] *Id.* at 1155.

[50] *Id.* at 1154.

[51] *Id.*

[52] ECF No. 18 ¶ 36.

[53] *See Solares v. Burns*, No. 21-1349, 2024 WL 1332501, at *6 (E.D. Cal. Mar. 28, 2024) (finding corrections officers invaded Ms. Solares's privacy rights when they took and displayed photographs of the son's remains); *Wessler v. U.S. Dep't of Just.*, 381 F. Supp. 3d 253, 259 (S.D.N.Y. 2019) (recognizing deceased federal pretrial detainees' family members' privacy interest in medical and autopsy records under Freedom of Information Act); *Maison v. Winn*, No. 19-10671, 2019 U.S. Dist. LEXIS 181222, at *1 (E.D. Mich. Oct. 21, 2019) (finding good cause to seal autopsy and crime scene photographs of habeas petitioner's children).

[54] ECF No. 18 ¶ 45.

[55] *Id.* ¶¶ 44–47.

[56] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[57] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

[58] *Onyiah v. City of Philadelphia*, 660 F. Supp. 3d 407, 417 (E.D. Pa. 2023).

[59] *Kane v. Chester Cnty. Dep't of Child., Youth & Families*, 10 F. Supp. 3d 671, 688 (E.D. Pa. 2014) (quoting *Kline ex rel. Ardnt v. Mansfield*, 255 Fed. App'x 624, 629 (3d Cir. 2007)).

[60] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

[61] *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 396 (1989)) (citations and quotations omitted).

[62] *Id.* (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

[63] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) ("The pleading requirements are different for failure-to-train claims because a plaintiff need not allege an unconstitutional policy.").

[64] 219 F.3d 261 (3d Cir. 2000).

---

[65] *Id.* at 276.

[66] *Id.* at 277 (quoting *Brown*, 520 U.S. at 409).

[67] *Alexander v. Bucks Cnty.*, No. 21-4633, 2023 WL 3229928, at *1 (E.D. Pa. May 2, 2023).

[68] *Id.* at *6.

[69] *Id.* at *8.

[70] *Id.* at *8–*9.

[71] *Id.* at *8.

[72] *Id.* at *9.

[73] ECF No. 18 ¶ 45.

[74] *Id.* ¶¶ 49–50.

[75] *McMillan v. Lycoming Cnty.*, No. 23-561, 2024 WL 315725, at *7 (M.D. Pa. Jan. 26, 2024) (quoting 42 PA. CONS. STAT. § 8550) (citations omitted).

[76] *See Sturgis v. City of Philadelphia*, No. 23-4409, 2024 WL 1604597, at *7 (E.D. Pa. Apr. 11, 2024) (finding plaintiff's intentional tort claims fall outside the scope of immunity in the Tort Claims Act because willful misconduct is inherent in plaintiff's allegations based on the "brutality and viciousness" of the officers' actions); *McMillan*, 2024 WL 315725, at *7 (finding intentional tort claims not barred by Tort Claims Act); *Suniaga v. Downingtown Area Sch. Dist.*, 504 F. Supp. 3d 430, 456 (E.D. Pa. 2020) ("Given that the charges in the Amended Complaint allege actual malice (as well as allow the Court to draw a reasonable inference of willful misconduct), the Tort Claims Act is inapposite here.").