IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN BROOKINS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-470 |
| | : | |
| | : | |
| THE CITY OF PHILADELPHIA, *et al.* | : | |

## MEMORANDUM

KEARNEY, J.                                                          October 21, 2024

A mother timely sued the City and police officers for her injuries arising from officers taking and electronically disseminating a picture of her deceased adult son laying on the ground immediately after he jumped from a bridge following an extended police encounter addressing the son's evident mental health crisis. She is scheduled for trial in approximately two months on her claims. But she now wants to plead other injuries (and recover damages for herself and her son's estate) claiming she always knew her son was actually still alive on the ground even though she swore in three earlier complaints the officers took a picture of her dead son on the ground after the fall. Courts strive to resolve all aspects of all claims properly, fully, and on their merits. We liberally allow parties discovering new facts to timely amend allegations to amplify facts or restate a legal theory. But what happens when the allegedly injured party moves to plead a substantially different fact pattern with new theories of liability months after the statute of limitations expired?

We today deny leave to change the facts and add legal theories otherwise plainly barred by the statute of limitations as they do not relate back to the claims before us. Yes, the case then and now involves a deceased young man and alleged police misconduct.  But the mother now wants to change the facts when she admittedly knew her son was alive post-fall when she timely filed suit and then twice amended with our leave. We grant leave to add limited facts and claims for alleged

pre-fall substantive due process violations and related wrongful death theory if the mother can show clear and convincing evidence of the officers' fraudulent concealment of their alleged shocking conduct allowing us to equitably toll the statute of limitations.

### I.  Ms. Brookins's repeatedly sworn allegations about the post-fall conduct.

Karen Brookins's adult son Marcus Boone suffered a severe mental health episode on March 18, 2022 leading him to stand on an overpass bridge on I-95 in Northeast Philadelphia.[1] Philadelphia Police officers arrived at the scene and created a perimeter.[2] Mr. Boone jumped from the bridge after interacting with the Police officers for approximately three hours.[3] The jump resulted in Mr. Boone's death.[4] Officer Christopher Culver took a photograph of Mr. Boone in the moments after Mr. Boone's death and shared it via text message.[5] The photograph ended up on social media and garnered thousands of views.[6]

Several weeks after the accident a gas station attendant unwittingly showed the photograph to Ms. Brookins.[7] The photograph caused her to suffer severe emotional distress with symptoms such as sleeplessness, anxiety, depression, and post-traumatic stress disorder.[8] Ms. Brookins timely sued the City of Philadelphia and a John Doe Defendant on January 31, 2024 alleging severe emotional distress and asserting three claims: violation of a privacy interest under the Fourteenth Amendment against John Doe #1, municipal liability against the City of Philadelphia, and intentional infliction of emotional distress.[9] Ms. Brookins's operative claims for invasion of privacy and municipal liability under the Fourteenth Amendment and intentional infliction of emotional distress arise out of the taking and circulation of the photograph of her deceased son.[10]

We granted Ms. Brookins leave to amend her Complaint after the statute of limitations expired on March 22, 2024 solely to identify officers represented by the City on scene at the time of the incident.[11] We granted her leave to amend a second time outside of the statute of limitations

to name additional officers.[12] Her claims in her three complaints always arose from the officers'

conduct after Mr. Boone jumped to his tragic death on March 18, 2022.

## II.    Proposed amended allegations adding pre-fall facts and theories and changing the key facts on the post-fall conduct known since March 2022.

Ms. Brookins now seeks leave to amend her Complaint for the fourth time beyond the two-

year statute of limitations.[13] She again alleges Mr. Boone struggled with mental health issues on

March 18, 2022 and stood on a bridge on I-95 in northeast Philadelphia.[14] But Ms. Brookins now

pleads additional facts about Mr. Boone's crisis on the bridge apparently adduced from evidence

she obtained after she filed her first three complaints. She now wants to plead the officers told Mr.

Boone during their approximate three hour interaction before he fell to, among other things, "stop

being silly[,]" complained Mr. Boone was "holding [them] up[,]" expressed some of the officers

on the scene did not have training or were not "on the list[,]" predicted Mr. Boone was "not going

to die when he jump[ed,]" and (while he stood on the bridge), "Fuck it. It's over."[15]

Ms. Brookins also now alleges Mr. Boone requested to speak with her, his counselor, and

a police officer with whom he had a relationship.[16] The officers denied his requests and refused to

allow him to speak with them.[17] Mr. Boone finally jumped from the bridge.[18] He displayed obvious

physical and mental problems on the ground after the jump.[19] The Police failed to render medical

attention necessary to save his life.[20] Officer Culver or another officer instead took a photograph

of him.[21]

Ms. Brookins now alleges she knew always knew her son was alive in the hospital

following his jump.[22] The hospital staff noticed Mr. Boone "still had vital signs of life" and tried

to resuscitate him.[23] Mr. Boone died despite the hospital staff's efforts.[24]

Ms. Brookins also expands on facts she knew in mid-2022 and never pled regarding her

conversation with the gas station attendant.[25] She asked the gas station attendant if he had heard

of the incident.[26] The attendant "reached into his pocket, took out his cell phone, and showed her the image of her son Marcus laying on the side of the road on a large piece of wood after his fall. 'Oh you mean this incident?', [the attendant] asked rhetorically. 'My friend who is a cop took this picture and sent it to me[.]'"[27]

Ms. Brookins now also wants to plead a cover-up. She alleges the Police officers lied to her at unpled times about how Mr. Boone ended up on the overpass, how he fell, the photograph they took of Mr. Boone as he lay on the ground, and their failure to provide him with medical care.[28] Ms. Brookins alleges the officers withheld information from her because they knew body camera footage recorded during the incident showed complete indifference to Mr. Boone's life and a complete disregard for police directives and procedures.[29]

## III.    Analysis

Ms. Brookins now alleges she is the administratrix of her son's estate.[30] She hopes to assert several new claims on behalf of herself and on behalf of her deceased son Mr. Boone. All or most of the new claims in her own name or for her son's estate are untimely.[31] The new claims concern the officers' conduct before and after Mr. Boone fell from the bridge.[32] She also seeks to amend her *existing* claims to add herself in her administratrix capacity as a party.[33]

She seeks (several months after the statute of limitations expired) to dramatically change facts she knew the day of Mr. Boone's passing. Congress permits parties to amend their pleadings once as a matter of course.[34] "A party may [otherwise] amend its pleading only with the opposing party's written consent or the court's leave."[35] We must freely give leave when justice so requires.[36] Our Court of Appeals takes a liberal approach to granting leave, but we are "not required to grant leave to amend in every instance where it is sought."[37] We will not allow a party "to add claims, unrelated in time and facts to the allegations in the original complaint and its amendments."[38] We

may deny leave if the moving party has demonstrated undue delay, bad faith, or dilatory motives; if the amendment would be futile; or if the amendment would prejudice the other party.[39]

In assessing undue delay, we focus on the moving party's motives for not amending sooner.[40] Delay alone is not always evidence of undue delay; a party does not act in bad faith if it has a colorable excuse for not amending earlier.[41]

We then assess futility. "Amendment is futile if a proposed amended complaint is 'frivolous or advances a claim or defense that is legally insufficient on its face.'"[42] A proposed amended complaint is futile if it fails to state a claim upon which relief can be granted or if the claims cannot overcome the statute of limitations.[43] Where the statute of limitations bars a claim, we only permit amendment if the proposed amended complaint relates back to the date of the original pleading" under Rule 15(c).[44] An amendment relates back if it asserts a claim arising out of the conduct, transaction, or occurrence set out in the original pleading.[45] Our Court of Appeals interprets "Rule 15(c) as requiring 'a common core of operative facts in the two pleadings.'"[46] "[P]roposed amendments relate back if they 'restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading.'"[47] "[T]he touchstone for relation back is fair notice . . . ."[48] We permit amendment where "the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds."[49] We treat "amendments significantly alter[ing] the nature of a proceeding by injecting new and unanticipated claims . . . far more cautiously."[50]

We also examine whether amendment would prejudice the other party. "Prejudice in the context of Rule 15(a) 'means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party.'"[51] We ask whether the amendment

"would result in additional discovery, cost, and preparation to defend against new facts or new theories."[52]

We must analyze each of Ms. Brookins's proposed amendments. Ms. Brookins now admits she knew her son passed away in the hospital – not upon impact – years ago. She also now admits she knew the officers engaged with her son on the ground before he went to the hospital because she knew someone transported him to the hospital. Ms. Brookins offers no reason why she did not timely plead the officers' failure to render adequate medical care post-fall. The post-fall factual allegations and related claims could have been timely brought. We agree her claims relate generally to police conduct towards her son on March 18, 2022.  But the relatedness test requires more than a general connection.  Ms. Brookins may not assert these allegedly always-known post-fall facts now.

But Ms. Brookins may not have known of the officers' pre-fall conduct until she reviewed the City's internal documents in discovery. And she alleges the officers concealed this information from her before she filed suit. We cannot find Ms. Brookins unduly delayed in moving to amend her Complaint as to the officers' conduct before the fall. Nor do we find she makes her request to add the pre-fall allegations in bad faith.[53] She changed counsel and moved to discover facts in a timely manner. Permitting Ms. Brookins to assert pre-fall factual allegations and two related claims may prejudice the officers to some degree. But we do not find the limited additional discovery following amendment will cause "substantial or undue prejudice."[54] And we must "balance the scope of additional discovery against the strong liberal policy favoring amendment under Rule 15."[55] The interest of justice persuades us to permit amendment limited to pre-fall conduct.

We grant Ms. Brookins leave to amend only to assert a Fourteenth Amendment substantive due process claim under Pennsylvania's Survival Act relating to identified officers' affirmative

conduct towards Mr. Boone on the bridge before he jumped and the related wrongful death action. The proposed factual allegations where Mr. Boone's status changes from dead to alive on the ground for new post-fall claims and the other proposed additional claims may not proceed.

### A. Ms. Brookins may not change her facts to plead Mr. Boone survived the fall after repeatedly swearing an officer took his picture on the ground while deceased as she admittedly knew this fact on March 18, 2022.

Ms. Brookins now wants to plead a substantially different version of the facts. Ms. Brookins's counsel repeatedly swore the Police officers took a photograph of Mr. Boone's deceased body moments after he died.[56] Her new counsel swears Mr. Boone did not die upon impact; he died in the hospital after resuscitation efforts failed.[57] The new constitutional and tort claims challenging the post-fall conduct arise from this second version of events of which no one had notice other than Ms. Brookins (and presumably non-party emergency and medical personnel). Ms. Brookins did not plead the facts she now claims she knew when she timely filed suit seven weeks before the statute of limitations expired.

She, along with experienced civil rights counsel, filed three complaints swearing Mr. Boone's deceased status at the time of photograph. Her new lawyer confirmed during oral argument she always knew the opposite. She could have easily pled the facts as she knew them before the statute of limitations expired. She cannot now dramatically change the facts with new lawyers. Several of Ms. Brookins's proposed new claims (or portions of them) arise directly from the new version of events where Mr. Boone was alive after he jumped. Ms. Brookins offers no compelling argument for her undue delay or to alleviate prejudice to the officers.[58]

### B. Ms. Brookins may not join the three existing claims as Administratrix.

Ms. Brookins seeks leave to amend her existing claims. In the operative Complaint Ms. Brookins only pursues claims in her individual capacity. She wants to add herself in her

administratrix capacity as a plaintiff so she may pursue these claims on her son's behalf as well. None of the parties address this issue in their briefing but they raised it at oral argument. We "address whether amendment is appropriate based on the substance of the Amended Complaint" and on the parties' oral arguments.[59]

### 1. Ms. Brookins conceded at oral argument Mr. Boone's estate does not have a Fourteenth Amendment privacy interest.

Ms. Brookins's first operative Fourteenth Amendment claim (Count I) alleges the Police officers violated her privacy rights by taking and circulating pictures of Mr. Boone's body.[60] Her municipal liability Fourteenth Amendment claim (Count II) alleges the City violated her privacy rights by failing to maintain appropriate policies.[61] But now her proposed amended Complaint alleges the photograph incident not only violated her individual privacy rights but also her deceased son's privacy.[62] Ms. Brookins's counsel conceded during oral argument it is only Ms. Brookins, not Mr. Boone, who has a privacy interest.

We deny Ms. Brookins leave to amend Counts I and II to add her son's estate as a real party in interest.

### 2. Ms. Brookins conceded Mr. Boone's estate does not have a claim for intentional infliction of emotional distress.

Ms. Brookins swore three times the Police officers intentionally caused her extreme mental anguish and suffering when they took and circulated the photograph of the deceased Mr. Boone.[63] The amended version of the claim is perplexing. Ms. Brookins adds herself in her administratrix capacity to the claim but emphasizes the officers' actions caused "extreme mental anguish and suffering of Plaintiff, ***Karen Brookins***."[64]

We asked at oral argument how ***Mr. Boone*** could have suffered emotional distress for conduct which occurred without his knowledge (the taking of the photograph, which Officer

Culver took from the vantage point of the bridge) or after his death (the circulation and posting of the photograph). Ms. Brookins's counsel conceded it is only Ms. Brookins, not Mr. Boone, who suffered emotional distress.

We deny Ms. Brookins leave to amend Counts III to add her son's estate as a real party in interest.

### C.   We grant in part and deny in part Ms. Brookins's leave to assert four new claims.

Ms. Brookins, in her individual capacity and on behalf of her son's estate, seeks to add a Fourteenth Amendment claim for failure to ensure safety of the scene and provide adequate medical treatment, a negligence claim, a wrongful death action, and a survival action. We deny leave to add a negligence claim. We grant in part her other requested amendments subject to discovery on a fraudulent concealment theory tolling the statute of limitations on proposed claims arising from the officers' alleged pre-fall conduct on the bridge.

### 1.   Ms. Brookins is barred from suing the City and officers on a negligence theory.

Ms. Brookins seeks to assert a negligence claim.[65] She alleges the City and Police officers breached their duty to Mr. Boone because they failed to secure the scene and provide medical treatment and failed to prevent the taking and circulation of the photograph.[66] Ms. Brookins alleges the City and officers breached their duty to her because they did not provide her with an accurate police report or conduct a thorough and accurate internal affairs investigation of Mr. Boone's fall.[67] She argues the proposed negligence claim relates back because the operative Complaint is replete with instances of negligence.[68]

***Timeliness and relation back.*** Relation back is only necessary when the statute of limitations has expired. We start by asking whether the proposed negligence claim is timely. The statute of limitations on the negligence claim asserted on Mr. Boone's behalf expired on March 18,

2024. It is less clear when or if the statute of limitations expired on the negligence claim Ms. Brookins brings on her own behalf arising from the officers' alleged failure to provide her with a police report or conduct a thorough investigation.[69] We find it unnecessary to further analyze issues of timeliness and relation back because the proposed negligence claim is futile for other reasons.[70]

**_Futility on other grounds._** A proposed amended complaint is futile if the amended pleading "would fail to state a claim upon which relief could be granted" under Rule 12(b)(6).[71] Counsel for the City and Officer Culver both argued Pennsylvania's Political Subdivision Tort Claims Act renders the negligence claim futile. We agree.

"In general, the Tort Claims Act provides immunity to the municipality and its agencies and employees."[72] "[T]he immunity that the Tort Claims Act provides to the City of Philadelphia extends to employees of the City of Philadelphia [if] . . . the employees are subject to civil damages arising out of an 'injury to a person or property caused by acts of the employee which are within the scope of his office or duties.'"[73] "This immunity is only pierced by a showing that the conduct in question falls within eight specified and non-applicable exceptions or if the conduct amounts to actual fraud, crime, actual malice or willful misconduct."[74]

Ms. Brookins now wants to plead each of the named Police officers acted "within the scope of his employment" at all relevant times.[75] Their "negligence, carelessness, and/or recklessness" caused injuries to Mr. Boone and Ms. Brookins.[76] The conduct she now alleges in proposed paragraphs 140 through 148 plainly "sounds in negligence, whereas willful misconduct generally requires, at a minimum, the commission of an intentional tort."[77]

Ms. Brookins's proposed negligence claim does not fall under any of the enumerated Tort Claims Act exceptions. Her negligence claims would not withstand a motion to dismiss.[78] Permitting the negligence claim to proceed would be futile.

### 2. Ms. Brookins may proceed on the pre-fall substantive due process theory as Administratix subject to discovery.

Ms. Brookins seeks to add a Fourteenth Amendment civil rights claim for failure to ensure basic safety of the scene and provide medical care and treatment on behalf of her son.[79] She alleges the Police officers and the City violated Mr. Boone's due process rights to be kept reasonably safe and receive adequate medical care while under their supervision.[80] She alleges constitutional violations arising from the officers' conduct before Mr. Boone's jump from the bridge and constitutional violations arising from their conduct after the jump. The officers failed to render aid to Mr. Boone while he stood on the bridge.[81] The officers then took his photograph after the jump instead of providing him with medical care.[82] She alleges the officers' lack of proper training and supervision contributed substantially to Mr. Boone's injuries.[83] Ms. Brookins also alleges the officers had a special relationship with Mr. Boone at the time of their unconstitutional acts on the bridge because they had custody and care over him.[84] Ms. Brookins asserts the claim in her individual capacity and on behalf of her son but pleads facts solely concerning harm to Mr. Boone.

We construe this claim under Pennsylvania's survival statute because it, "[l]ike any cause of action, . . . is only capable of surviving [Mr. Boone's] death pursuant to an applicable survival statute."[85] We analyze the claim in two parts because it involves two discrete set of actions: pre-fall conduct and post-fall conduct.

### i. The substantive due process claim involving pre-fall conduct does not relate back but may be timely if discovery reveals fraudulent concealment and would withstand a motion to dismiss.

Ms. Brookins now wants to allege substantive due process violations arising from the officers' interactions with Mr. Boone on the bridge before his jump including refusing to let him speak to his mother and other trusted individuals and making a number of disturbing remarks.[86] Ms. Brookins argues this new Fourteenth Amendment claim relates back because it stems from the

same transaction or occurrence and the operative Complaint already contains civil rights claims.[87] She does not define the transaction or occurrence.[88]

*Timeliness and relation back.* The Supreme Court cautions we should "not interpret 'conduct, transaction, or occurrence' in such a broad manner to construe essentially all amendments as permissible under the relation-back doctrine."[89] The operative conduct, transaction, or occurrence in this case has always been the taking and circulation of the photograph of the deceased Mr. Boone.[90]

We cannot find "a common core of operative facts" between these new pre-fall allegations and the operative pleadings.[91] Ms. Brookins, in her operative Complaint, says nothing about the officers' pre-fall conduct. The alleged constitutional violations arising from the officers' pre-fall interactions with Mr. Boone are distinct and lack the touchstone of fair notice required for relation back.

But relation back is only necessary if the statute of limitations has run.[92] Ms. Brookins's new Fourteenth Amendment claim concerning pre-fall conduct may be permissible under a different theory of equitable tolling raised at oral argument. Ms. Brookins's proposed amended Complaint alleges the Police officers lied to Ms. Brookins following Mr. Boone's suicide about how Mr. Boone ended up the overpass, how he fell, the photograph they took of him, and the medical care.[93] She now wants to allege the officers withheld information about Mr. Boone's death because they knew the body camera footage showed complete indifference to his life and a disregard for police directives and procedures.[94] Ms. Brookins pleads she repeatedly requested but did not receive the body camera footage or internal affairs report until August 20, 2024 and September 16, 2024.[95] Ms. Brookins's counsel claimed during oral argument the officers fraudulently concealed information from Ms. Brookins.

Ms. Brookins's substantive due process claim is subject to the same two-year statute of limitations applied to personal injury tort claims arising in Pennsylvania.[96] The discovery rule and the doctrine of fraudulent concealment are exceptions which act to toll the running of the statute of limitations.[97] The discovery rule does not apply to survival actions, so we study the doctrine of fraudulent concealment.[98] "Where, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations."[99] The "defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient."[100] Fraudulent concealment only applies if "[a] defendant . . . committed some affirmative independent act of concealment upon which [a] plaintiff[] justifiably relied."[101] But a duty to speak must exist for fraudulent concealment to occur; "[m]ere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment."[102] Mere mistake or lack of knowledge is also insufficient.[103] Fraudulent concealment must be pled with "particularity"; at summary judgment, the asserting party bears the burden of proving fraud or concealment by clear and convincing evidence.[104] "While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made."[105]

We today address only allegations. We are guided by analysis from our colleagues. Our Court of Appeals studied the doctrine of fraudulent concealment in the context of alleged police misconduct in *Swietlowich v. Bucks County*.[106] A woman sued the county and police officers alleging if they had periodically checked the cells of detained individuals her husband would not have committed suicide.[107] The officers moved to dismiss based on the statute of limitations.[108] Ms. Swietlowich invoked the fraudulent concealment doctrine and argued the officers falsified the

cell check log, possibly to make it appear cell inspections had taken place when they actually did not.[109] The district court denied the officers' motion to dismiss after an evidentiary hearing.[110] Our Court of Appeals explained the trial court improperly focused on the cell log because there was no evidence Ms. Swietlowich asked to see the cell log or even knew it existed until four years after her husband's death; "the alteration of records of which the plaintiff was completely oblivious in no way misled her."[111] The trial court should have focused on whether Ms. Swietlowich delayed bringing suit because she reasonably believed the officers' conduct was not actionable based on their statements of adequate inspections. Our Court of Appeals explained the trial court did not direct the jury's attention to the critical question: "[w]hen did events occur that would have required a reasonable person to eschew the reliance on police assurances?"[112]

We find it appropriate to allow the parties to conduct limited discovery consistent with our October 10, 2024 Order on the issue of fraudulent concealment of the officers' pre-fall conduct to allow us to evaluate the timeliness of the substantive due process claim under a summary judgment standard or a trial if warranted under Rule 56.[113]

***Futility on other grounds.*** Assuming Ms. Brookins can prove timeliness under the fraudulent concealment doctrine, we must also assess whether the pre-fall substantive due process claim on Mr. Boone's behalf would survive a Rule 12(b)(6) motion under our Supreme Court's holding in *DeShaney v. Winnebago County Department of Social Services*.[114] Amendment would be futile if not. "*DeShaney* stands for the proposition that the Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody."[115] But there are two recognized exceptions: the "special relationship" exception, which is "primarily . . . a test of physical custody[,]" and the "state-created danger" exception.[116] We must assess whether the officers' pre-

14

fall conduct – their refusal to allow Mr. Boone to speak to his mother and troubling statements – fall within either of these exceptions.

Under the state-created danger theory, "liability may attach where the state acts to **create** or **enhance** a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process."[117] The state-created danger exception has four elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) the state actor affirmatively used his or her authority in a way that created danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all.[118]

Our Court of Appeals has identified three potential levels of culpability required to shock the conscience. "In 'hyperpressurized environment[s] requiring a snap judgment,' an official must actually intend to cause harm . . . to be liable."[119] "In situations in which the state actor is required to act 'in a matter of hours or minutes,' we require that the state actor 'disregard a great risk of serious harm.'"[120] "And where the actor has time to make an 'unhurried judgment[],' a plaintiff need only allege facts supporting an inference that the official acted with a mental state of 'deliberate indifference.'"[121]

Ms. Brookins pleads facts sufficient to state a substantive due process claim under the state-created danger theory.[122] We look to Judge Savage's motion to dismiss analysis in *Woodward v. Bashore*.[123] Township employee Woodward committed suicide one week after his manager accused him of fraud, placed him on leave, and threatened to fire him.[124] Mr. Woodward's wife

sued the manager and the Township invoking the state-created danger exception to *Deshaney*.[125] Judge Savage's analysis focused on two factors. Ms. Woodward alleged under the "foreseeable and fairly direct" prong the manager knew her husband was distraught during the meeting where the manager placed Mr. Woodward on leave and his vulnerable psychological condition made it foreseeable he would commit suicide.[126] Judge Savage held the alleged facts concerning Mr. Woodward's vulnerability were "scant" but enough to invite discovery.[127] Applying the deliberate indifference standard to the "shocks the conscience" prong, Ms. Woodward alleged the manager led Mr. Woodward to believe he would be fired although he knew of Mr. Woodward's risk of self-harm.[128] Judge Savage held if the manager knew of Mr. Woodward's vulnerable condition but acted anyway his conduct could be severe enough to shock the conscience.[129] Judge Savage denied the motion to dismiss, concluding Ms. Woodward alleged "sufficient facts, albeit barely, to allow the state-created danger cause of action to proceed to discovery."[130] Judge Savage, presumably like us, will need to review the summary judgment record.

We face similar issues on the futility analysis. Under the first element of the state-created danger doctrine, there is little question Mr. Boone's suicide was a foreseeable and fairly direct result of the officers' pre-fall conduct given he was standing on a bridge at the time of their remarks and the officers' alleged statements confirming they knew the risk. Ms. Brookins, under the second prong, pleads facts sufficient to suggest the officers' conduct shocks the conscience. Looking to the sliding scale our Court of Appeals employs to determine the correct level of culpability, the officers must have consciously disregarded a great risk of serious harm because the situation required the officers to act in a matter of hours or minutes.[131] As noted above Ms. Brookins alleges while Mr. Boone stood on the bridge the officers told him to stop being silly, complained he was holding them up, predicted he would not die if he jumped, and said, "Fuck it. It's over."[132] We find

this conduct could, if proven, constitute conscious disregard of a substantial risk of serious harm given the officers' admitted awareness of Mr. Boone's vulnerable state. The alleged conduct also suggests, under the fourth prong of the test, the officers used their authority to render Mr. Boone more vulnerable to danger than if they had not acted at all. For instance, it is at least conceivable the officers' verbal prediction Mr. Boone would not die if he jumped and their complaints about how long they'd been at the scene influenced his decision to jump. Finally, Ms. Brookins pleads facts under the third prong requiring a relationship between the officers and Mr. Boone sufficient to exclude instances where the state actor only creates a threat to the general public.[133] There is little question Mr. Boone – being the only person, presumably, standing on the bridge on I-95 on the day in question – was a "foreseeable victim" of the officers' actions.[134]

We find Ms. Brookins's substantive due process claim would withstand a motion to dismiss under the state-created danger exception to *Deshaney*. This claim is not futile assuming Ms. Brookins will later prove the fraudulent concealment doctrine tolls the statute of limitations,

    **ii.  The substantive due process claim involving post-fall conduct does not relate back and is not subject to equitable tolling.**

Ms. Brookins also seeks to allege substantive due process violations arising from the officers' interactions with Mr. Boone after he jumped from the bridge.[135]

***Timeliness/relation back.*** The portion of the claim concerning post-fall conduct, unlike the portion of the claim concerning pre-fall conduct, is not potentially subject to equitable tolling principles because there is no viable argument the officers fraudulently concealed their failure to render medical care to Mr. Boone. Ms. Brookins now admits knowing as of March 18, 2022 the officers engaged with her son after he jumped because the 911 operator told her the Police had her son and someone was transporting him to the hospital.[136] She would have known that day of their failure to render adequate medical care. Even if Ms. Brookins did not know the Police officers

allegedly violated her son's civil rights until she discovered on April 6, 2022 the officers took a photograph of him instead of providing medical care, the statute of limitations expired in April 2024 at the latest.

Nor does this post-fall substantive due process claim relate back on Mr. Boone's behalf. Ms. Brookins now alleges Mr. Boone was alive after he jumped from the bridge and the officers photographed him instead of giving him medical care, violating his substantive due process rights.[137] The current pleadings allege Mr. Boone died upon impact and the officers took the photograph after his death, resulting in constitutional violations to his ***mother***. The operative Complaint does not give the City and the officers fair notice of constitutional violations to ***Mr. Boone*** because section 1983 "does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death."[138] The City and the officers could not have predicted Mr. Boone's estate had a viable cause of action for civil rights violations based on the operative pleadings where Mr. Boone is dead during their challenged conduct.

We need not address whether the pre-fall substantive due process claim would survive a motion to dismiss. Its failure to relate back renders it futile even if it could meet the 12(b)(6) standard. We sympathize with Ms. Brookins's desire to be compensated for the injuries she suffered as a result of allegedly callous conduct after her son jumped from the bridge. But we are also cognizant "bad facts make bad law."[139] The Supreme Court, through Rule 15(c), ensures a party who has notice of litigation concerning a particular occurrence has all the notice the legislature intended the statute of limitations to provide.[140] We cannot make this finding of fair notice.

**3. Ms. Brookins may proceed on the wrongful death action for pre-fall substantive due process violations as Administratrix subject to discovery on tolling the statute of limitations.**

Ms. Brookins may not bring a claim in her individual capacity for pre-fall conduct violating her son's substantive due process rights. Our Court of Appeals follows "the general rule that 'a litigant may only assert his own constitutional rights or immunities,' . . . and the principle that 'one cannot sue for the deprivation of another's civil rights.'"[141]

But we study Ms. Brookins's related claim under Pennsylvania's Wrongful Death Act seeking to recover damages for her son's death.[142] We only consider this claim to the extent it alleges the officers' **pre-fall** conduct caused Mr. Boone's death because, as above, Ms. Brookins is precluded from pleading a post-fall substantive due process claim in her amended Complaint.[143] "A wrongful death action . . . is created for the benefit of and is held by statutorily specified survivors and is intended to compensate them for the pecuniary loss suffered because of the decedent's death."[144] "Put another way, the action remedies the loss sustained by the survivors who are deprived of the decedent's earnings, companionship, etc."[145]

***Timeliness/relation back.*** Ms. Brookins again relies on relation back as the basis for this new claim. She argues the City and Police officers were on notice she might later assert these claims because they knew Mr. Boone died on March 18, 2022.[146]

We do not agree relation back allows this claim. The wrongful death statute "imposes liability only where the defendant's tortious conduct causes death."[147] Only the proposed amended Complaint, not the operative Complaint, alleges the Police officers' conduct on the bridge had anything to do with Mr. Boone's death; the operative pleadings are limited to the photograph the officers took **after** Mr. Boone died. The City and officers did not have fair notice of facts giving rise to a wrongful death action.[148]

Yet we find this claim may proceed under the same analysis we applied to Ms. Brookins's pre-fall substantive due process claim. We need only reach relation back if the statute of limitations has run. The doctrine of fraudulent concealment could toll the statute of limitations. Ms. Brookins argues the officers fraudulently concealed their wrongful pre-fall conduct such that she could not bring claims related to that conduct until after the statute of limitations expired. We permit the parties to engage in limited discovery and address fraudulent concealment at summary judgment when we can also address the extent the proposed wrongful death claim derives from the pre-fall conduct forming the basis of the substantive due process claim.

**Futility on other grounds.** Assuming the claim is timely, we must also assess its viability on a 12(b)(6) motion. District courts in our Circuit are split as to whether plaintiffs may bring section 1983 wrongful death actions given the *O'Malley* rule prohibiting litigants from suing for the deprivation of another's civil rights. Some of our colleagues believe section 1983 wrongful death claims conflict with our Court of Appeals's holding in *O'Malley* because "plaintiffs would be allowed to recover damages based on the violation of . . . [another's] civil rights."[149] Other of our colleagues, such as Judge Caputo in *Becker v. Carbon County*, are "not convinced that *O'Malley* forecloses the reliance on Pennsylvania's wrongful death act into a measure of damages for the violation of a decedent's rights."[150] Judge Caputo pointed out our Court of Appeals in *O'Malley* "specifically referenced the fact that the inmates in that case were able to, and were in fact, asserting their own claims."[151]

We agree with this second school of thought. We are guided by the purpose of the Wrongful Death Act, which is to compensate survivors for the losses suffered because of the decedent's death.[152] Family members may recover "for the value of the decedent's services, including society and comfort, lost as a result of his death."[153] "The sole focus of a wrongful death claim is on post-

death damages."[154] "[W]rongful death actions are derivative of decedent's injuries" but "they are not derivative of decedent's rights[.]"[155] With this backdrop we cannot join with our colleagues who have held a section 1983 wrongful death claim improperly permits litigants to sue based on the violation of another person's civil rights. Even where the civil rights violation causes the death, it does not necessarily follow the damages sought in a wrongful death action are based upon the civil rights infringement. Rather, the damages are based on the loss of post-death services.[156] It is a nuanced distinction but, we think, an important one. We find it most prudent to allow Ms. Brookins to assert the wrongful death claim and address it on summary judgment rather than precluding it as futile as a matter of law which our Court of Appeals has not yet decided.

### IV.    Conclusion

Ms. Brookins, through experienced civil rights counsel, sued the City and its officers several weeks before the statute of limitations expired for her alleged injuries arising from an officer's photographing her deceased son after he jumped off a bridge for no police purpose and then distributing the photograph. We found she stated a claim. The statute of limitations expired. We twice granted her leave to amend to identify the officers as the allegations plainly related back to the claim involving the photograph of Mr. Boone. But she then hired new counsel. Ms. Brookins now wants to significantly alter her post-fall facts and theories such as claiming her son did not pass until reaching the hospital. She seeks to brings claims for conduct before and after her son's fall. These dramatically different facts do not relate back to Ms. Brookins's personal claims for harm created when officers took and distributed a photograph of her deceased son on the ground after his fall. Her only way to assert these new allegations is by proving the statute of limitations equitably tolled. We grant her leave to amend her Complaint only to assert pre-fall factual allegations, the pre-fall substantive due process claim, and the related wrongful death action. We

will decide at summary judgment or trial whether the officers fraudulently concealed information preventing her from timely asserting these claims and whether she can otherwise state a claim.

---

[1] ECF 38 ¶ 28.

[2] *Id.* ¶ 29.

[3] *Id.* ¶¶ 29, 30.

[4] *Id.* ¶ 30.

[5] *Id.* ¶¶ 3, 31; ECF 57 ¶¶ 3, 31.

[6] ECF 38 ¶ 35.

[7] *Id.* ¶ 36.

[8] *Id.* ¶ 37.

[9] ECF 1.

[10] ECF 38 ¶¶ 40, 45, 50.

[11] ECF 17; ECF 18.

[12] ECF 38.

[13] ECF 77. Ms. Brookins sought leave to amend her Complaint for a third time in August 2024. She tried to assert untimely constitutional and tort claims on behalf of herself and her son. ECF 62-2. Ms. Brookins's counsel confirmed during oral argument Ms. Brookins did not have the letters of administration naming her the administratrix of her son's estate. We denied Ms. Brookins's Motion to amend finding she lacked standing to pursue claims on behalf of her son and offered no legal basis for the claims she sought to add on behalf of herself. ECF 71.

[14] ECF 77-1 (Proposed Am. Compl.) ¶¶ 1, 37, 43.

[15] *Id.* ¶ 41.

[16] *Id.* ¶¶ 47–48.

[17] *Id.* ¶ 49.

[18] *Id.* ¶ 50. We note the operative pleading refers to the incident as Mr. Boone's "jump" from the bridge. ECF 38 ¶¶ 1, 30. The proposed amended Complaint largely refers to the incident as Mr. Boone's "fall" from the bridge. *See, e.g.*, ECF 77-1 (Proposed Am. Compl.) ¶¶ 50–53, 58, 61. But the parties do not genuinely dispute Mr. Boone committed suicide.

[19] ECF 77-1 ¶ 53.

[20] *Id.* ¶¶ 1, 53–56.

[21] *Id.* ¶¶ 3, 56.

[22] *Id.* ¶¶ 65, 67.

[23] *Id.* ¶ 67.

[24] *Id.* ¶ 69.

[25] *Id.* ¶ 74.

[26] *Id.* ¶ 75.

[27] *Id.* ¶ 76.

[28] *Id.* ¶¶ 88–89.

[29] *Id.* ¶ 89.

[30] *See generally id.*

[31] All the proposed new claims have a two-year statute of limitations. *See Taylor v. Yampolsky*, No. 22-294, 2022 WL 17084133, at *3 (M.D. Pa. Nov. 18, 2022) (holding the statute of limitations for claims under section 1983 is subject to Pennsylvania's two-year statute of limitations for personal injury); 42 PA. STAT. AND CONS. STAT. § 5524(2) (negligence claims, survival actions, and wrongful death actions are subject to two-year statute of limitations). The statute of limitations for the proposed new claims brought in Ms. Brookins's individual and/or administratrix capacity (Fourteenth Amendment failure to ensure safety of the scene and provide medical treatment, negligence, survival, and wrongful death) accrued, for the most part, on March 18, 2022 and expired two years later, subject to our below analysis of the fraudulent concealment doctrine which applies to several of the claims.

The statute of limitations for the proposed negligence claim Ms. Brookins seeks to add in her *own* capacity is unclear because she does not plead when the City and Police officers negligently failed to provide her with a police report or perform an adequate investigation. But this is immaterial as the negligence claim is futile on other grounds.

[32] ECF 77-1 (Proposed Am. Compl.) ¶¶ 106–62.

[33] The statute of limitations for the existing claims (Fourteenth Amendment privacy interest and intentional infliction of emotional distress), which Ms. Brookins now seeks to bring on Mr. Boone's behalf as well, accrued on March 18, 2022 and expired two years later. *See Taylor*, 2022 WL 17084133, at *3 (section 1983 claims subject to two-year statute of limitations); 42 Pa. Stat. and Cons. Stat. § 5524(7) (any actions for injuries founded on intentional conduct subject to two-year statute of limitations).

[34] Fed. R. Civ. P. 15(a)(1).

[35] Fed. R. Civ. P. 15(a)(2).

[36] *Id.*

[37] *McCracken v. Exxon/Mobil Co.*, No. 08-2932, 2009 WL 3822041, at *3 (E.D. Pa. Nov. 12, 2009), *aff'd sub nom. McCracken v. Exxon/Mobil*, 407 F. App'x 565 (3d Cir. 2010).

[38] *Boyer v. Taylor*, No. 06-694-GMS, 2012 WL 1132786, at *2 (D. Del. Mar. 30, 2012) (denying motion to amend where "[t]he proposed amendment [was] essentially a new action, against new defendants with new claims arising out of a set of operative facts that are unrelated to the factual claims in the original or amended complaint"); *Collins v. Monmouth Cnty. Corr. Inst.*, No. 21-02034, 2023 WL 4086072, at *2 (D.N.J. June 20, 2023) (emphasis added) ("Where the proposed amendments *do not* allege new facts or claims, courts usually favor allowing the amendment." (citing *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823–24 (3d Cir. 1978))). Where "the legal and factual matters in dispute change[] drastically[,]" it can result in "unmistakable prejudice[.]" *Cornell*, 573 F.2d at 824, 825.

[39] *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[40] *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

[41] *Id.*

[42] *Harris v. Steadman*, 160 F. Supp. 3d 814, 817 (E.D. Pa. 2016) (quoting *Thomas v. SmithKline Beecham Corp.*, No. 00–2948, 2002 WL 32351172, at *3 (E.D. Pa. Sept. 5, 2002)).

[43] *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *Anderson v. Bondex Intern., Inc.*, 552 F. App'x 153, 156 (3d Cir. 2014).

---

[44] *Anderson*, 552 F. App'x at 156.

[45] Fed. R. Civ. P. 15(c)(1)(B).

[46] *Anderson*, 552 F. App'x at 156–57 (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)).

[47] *Id.* at 157 (quoting *Bensel*, 387 F.3 at 310).

[48] *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012).

[49] *Bensel*, 387 F.3d at 310 (citing *Michelsen v. Penney*, 135 F.2d 409, 416–17 (2d Cir. 1943)).

[50] *Glover*, 698 F.3d at 146 (quoting *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002)).

[51] *United States v. 2001 Honda Accord EX VIN #1HGCG22561A035829*, 245 F. Supp. 2d 602, 613 (M.D. Pa. 2003) (alteration in original) (quoting *Tarkett Inc. v. Congoleum Corp.*, 144 F.R.D. 289, 291 (E.D. Pa. 1992)).

[52] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

[53] Ms. Brookins argues she did not unduly delay her amended Complaint because she obtained new counsel sometime around July 2024 and her prior counsel conducted minimal discovery. ECF 77-1 (Pl.'s Memo) at 6–8. Ms. Brookins points out she did not receive footage from body cameras until August 2024 and did not receive the internal affairs report until September 2024. *Id.* at 12. The City rebuts this stating she did not request the body camera footage until July 2024 and her prior counsel received portions of unfinished the internal affairs report on July 3, 2024 (as opposed to September). ECF 81 at 7. It also argues Ms. Brookins should have made a Right to Know request. *Id.* at 7 n.2. We note any delay in asking for the body camera footage is not unexpected given Ms. Brookins obtained new counsel in July 2024. And even if Ms. Brookins received portions of the internal affairs report in July, this does not necessarily negate her claim she made many requests for it before receiving it. We do not find Ms. Brookins's delay as to the pre-fall claims rises to the level of bad faith. *See Adams*, 739 F.2d at 868 (finding no bad faith where party had colorable excuse for not amending earlier).

[54] *Cureton*, 252 F.3d at 273; *see also* ECF 84.

[55] *Johnson v. New Jersey*, No. 18-11299, 2023 WL 3952985, at *5 (D.N.J. June 12, 2023).

[56] ECF 38 ¶¶ 1, 31, 46, 47.

[57] ECF 77-1 (Proposed Am. Compl.) ¶¶ 53, 55–56, 60, 67–69.

[58] Ms. Brookins's counsel during oral argument suggested the officers always knew Mr. Boone was alive post-fall because they were there at the scene. But the relation back test concerns what was pled in earlier **complaints**. And numerous officers are named defendants in this case. The

operative complaint provides no basis for determining **which** officers knew, let alone the lawyers representing the City. The City's attorney confirmed at oral argument she did not know Mr. Boone was alive post-fall until she read the proposed amended Complaint. Ms. Brookins asks us to blame her earlier counsel for not pleading this fact in the three earlier versions of the complaint. But she swore to these facts and offers no basis to find her earlier counsel disregarded or ignored this fact.

[59] *Berk v. Ritz Carlton Condo. Ass'n*, No. 23-1877, 2024 WL 228414, at *18 (D.N.J. Jan. 22, 2024) (finding proposed amendment to add an additional party as a plaintiff based on the proposed allegations would be futile).

[60] ECF 38 ¶ 40.

[61] *Id.* ¶¶ 45–47.

[62] ECF 77-1 (Proposed Am. Compl.) ¶¶ 92, 97.

[63] ECF 38 ¶¶ 50–51.

[64] ECF 77-1 (Proposed Am. Compl.) ¶¶ 101, 103 (emphasis added).

[65] *Id.* ¶¶ 140–48.

[66] *Id.* ¶¶ 142, 145, 146.

[67] *Id.*

[68] ECF 77-1 (Pl's Memo) at 11.

[69] Pennsylvania's "discovery rule applies to toll the statute of limitations in any case in which a party is reasonably unaware of his or her injury at the time his or her cause of action accrued." *Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011) (citing *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005)). Ms. Brookins does not plead when her negligence claim accrued.

[70] *McNeil v. Metzger*, No. 16-1083, 2020 WL 1154914, at *9 (D. Del. Mar. 10, 2020) ("Even if the proposed amendment relates back to the original petition such that it is not time-barred, the proposed amendment may still be deemed futile.").

[71] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

[72] *Gremo v. Karlin*, 363 F. Supp. 2d 771, 792 (E.D. Pa. 2005).

[73] *Id.* (quoting 42 PA. STAT. AND CONSOL. STAT. § 8545).

[74] *Houser v. Johnson*, No. 06-1198, 2008 WL 2433119, at *3 (E.D. Pa. June 12, 2008). The exceptions, none of which apply here, "are: 1) operation of motor vehicles; 2) care, custody and control of personal property; 3) care, custody and control of real property; 4) dangerous

conditions of trees, traffic controls and street lighting; (5) dangerous conditions of utility service facilities; (6) dangerous conditions of streets; (7) dangerous conditions of sidewalks; and (8) care, custody and control of animals." *Id.* at *3 n.8 (citing 42 PA. STAT. AND CONSOL. STAT. § 8541).

[75] ECF 77-1 (Proposed Am. Compl.) ¶¶ 10–27.

[76] *Id.* ¶ 141.

[77] *Jones v. City of Phila.*, No. 08-3336, 2011 WL 710212, at *5 (E.D. Pa. Feb. 25, 2011) (footnote omitted) (first citing *Brockington v. City of Phila.*, 354 F.Supp.2d 563, 570–71 (E.D.Pa.2005); then citing *O'Neill v. City of Phila.*, No. 97-2141, 2006 WL 3682104 at *6 (E.D. Pa. Dec.12, 2006); then citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 293–94 (Pa.1994); and then citing RESTATEMENT (SECOND) OF TORTS § 500 (AM. L. INST. 1965)).

[78] *See Great N. Ins. Co. v. Whipple-Allen Real Est.*, No. 18-41, 2018 WL 3618689, at *5 (W.D. Pa. July 30, 2018) ("[D]istrict courts routinely grant motions to dismiss in this district on the basis of immunity under the Tort Claims Act." (first citing *Brock v. Allegheny Cnty. DA Off.*, No. 12-0914, 2013 WL 3989452 (W.D. Pa. Aug. 2, 2013); then citing *Means v. City of McKeesport*, No. 11-1092, 2012 WL 6552835 (W.D. Pa. Nov. 19, 2012)).

[79] ECF 77-1 (Proposed Am. Compl.) ¶¶ 106–39.

[80] *Id.* ¶¶ 109–10.

[81] *Id.* ¶¶ 39–42, 46–50, 108–12.

[82] *Id.* ¶¶ 115–16.

[83] *Id.* ¶¶ 128–35.

[84] *Id.* ¶ 118.

[85] *Gee v. CBS, Inc.*, 471 F. Supp. 600, 640–41 (E.D. Pa.), *aff'd*, 612 F.2d 572 (3d Cir. 1979). Ms. Brookins also seeks to add a survival action in Count VII. ECF 77-1 ¶¶ 157–162. A survival action is not an independent cause of action, but a continuation of an action which accrued to the decedent for injuries he suffered before his death. *Dubose v. Quinlan*, 173 A.3d 634, 645 (Pa. 2017). "[S]urvival damages are essentially those for pain and suffering between the time of injury and death." *Frey v. Pa. Elec. Co.*, 607 A.2d 796, 798 (Pa. 1992) (citing Pa. Cons. Stat. § 8302). When a plaintiff seeks to assert a standalone survival action alongside a claim(s) for the underlying tort, some of our colleagues allow both claims to proceed. *See e.g.*, *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 504 (W.D. Pa. 2018) ("Wrongful death and survival actions have often been brought alongside Section 1983 claims."). Other of our colleagues dismiss the standalone survival action as superfluous. *See Pearce v. Borough of Glassport*, No. 16-438, 2016 WL 3855033, at *2 & n.1 (W.D. Pa. July 15, 2016) (explaining the plaintiff's section 1983 and state law tort claims were "survival" claims and dismissing the "survival action" as duplicative). We find it unnecessary to reach this issue and simply construe the substantive due process claim,

insofar as it is brought on Mr. Boone's behalf, as a survival action. The separate survival claim pled in Count VII may proceed to the extent we allow the substantive due process claim to proceed on Mr. Boone's behalf.

To the extent Ms. Brookins seeks to bring a claim on her **_own_** behalf related to the officers' pre-fall conduct, we construe this under Pennsylvania's Wrongful Death Act. *See infra* Section II(3).

[86] *See e.g.*, ECF 77-1 (Proposed Am. Compl.) ¶¶ 46–49, 108–10, 112, 114.

[87] ECF 77-1 (Pl.'s Memo) at 10–11.

[88] *Id.* at 10.

[89] *United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019).

[90] *See generally* ECF 38.

[91] *Anderson*, 552 F. App'x at 156–57 (quoting *Bensel*, 387 F.3d at 310).

[92] *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 453 (3d Cir. 1996) (emphasis added) ("**_If_** the limitations period has expired, in order to survive, the amendment must relate back to the original complaint under Rule 15(c).").

[93] ECF 77-1 (Proposed Am. Compl.) ¶ 88.

[94] *Id.* ¶ 89.

[95] ECF 77-1 (Pl.'s Memo) at 12.

[96] *Taylor v. Yampolsky*, No. 22-294, 2022 WL 17084133, at *3 (M.D. Pa. Nov. 18, 2022) (first citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); then citing *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009); and then citing 42 PA. STAT. AND CONS. STAT. § 5524(2)).

[97] *Krapf v. St. Luke's Hosp.*, 4 A.3d 642, 649–50 (Pa. Super. Ct. 2010) (quoting *Fine*, 870 A.2d at 858).

[98] *Dubose*, 173 A.3d at 646.

[99] *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987) (quoting *Schaffer v. Larzelere*, 189 A.2d 267, 269 (1963)).

[100] *Id.* (first citing *Walters v. Ditzler*, 227 A.2d 833, 835 (1967); then citing *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 476 (1964)).

[101] *Krapf*, 4 A.3d at 650 (alterations in original) (quoting *Lange v. Burd*, 800 A.2d 336, 339 (Pa. Super. Ct. 2002)).

---

[102] *Id.* (citing *Lange*, 800 A.2d at 339).

[103] *Molineux*, 532 A.2d at 794 (citing *Schaffer*, 189 A.2d at 269).

[104] *Johnson v. SmithKline Beecham Corp.*, 55 F. Supp. 3d 603, 615 (E.D. Pa. 2014) ("a plaintiff must plead fraudulent concealment with particularity"); *Molineux*, 532 A.2d at 794 ("[T]he burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." (citing *Nesbitt*, 204 A.2d at 475)).

[105] *Krapf*, 4 A.3d at 650 (quoting *Fine*, 870 A.2d at 860).

[106] 610 F.2d 1157 (3d Cir. 1979).

[107] *Id.* at 1160–61.

[108] *Id.* at 1161.

[109] *Id.*

[110] *Id.*

[111] *Id.* at 1162.

[112] *Id.* at 1163.

[113] *See Germinaro v. Fid. Nat'l Title Ins. Co.*, 107 F. Supp. 3d 439, 452 (W.D. Pa. 2015) ("[T]he Court finds that factual inquiries concerning Plaintiffs' diligence are better suited for revisitation at the summary judgment stage with the benefit of a more fully developed evidentiary record." (citing *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 301–02 (3d Cir. 2010))). The parties' counsel may depose Ms. Brookins and the identified officers from whom she sought information. ECF 86 ¶ 3.

[114] 489 U.S. 189 (1989).

[115] *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).

[116] *Sanford v. Stiles*, 456 F.3d 298, 304 & n.4 (3d Cir. 2006).

[117] *Id.* at 304 (first citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996); then citing *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003)).

[118] *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).

[119] *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (first alteration in original) (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015)).

[120] *Id.* (quoting *Sanford*, 456 F.3d at 310).

[121] *Id.* (alteration in original) (quoting *Sanford*, 456 F.3d at 309).

[122] Ms. Brookins pleads the special relationship exception. ECF 77-1 (Proposed Am. Compl.) ¶ 118. We agree with Officer Culver the alleged facts do not fit within the scope of the special relationship exception because Mr. Boone was not in the officers' custody while he was on the bridge. ECF 78 at 13. "In this Circuit, the special relationship exception has been extended only to situations involving (1) incarcerated individuals, (2) involuntarily committed mental patients, and (3) foster children." *Hagwood v. City of Phila.*, 604 F. Supp. 3d 293, 302 (E.D. Pa. 2022) (first citing *Nicini v. Morra*, 212 F.3d 798, 807–08 (3d Cir. 2000); then citing *Lichtenstein v. Lower Merion Sch. Dist.*, 316 F. Supp. 3d 855, 865 (E.D. Pa. 2018)). Though Ms. Brookins does not invoke the state-created danger exception by name, we can divine this exception from the pled facts.

[123] No. 23-5126, 2024 WL 3161756 (E.D. Pa. June 25, 2024).

[124] *Id.* at *1.

[125] *Id.*

[126] *Id.* at *3.

[127] *Id.* at *4.

[128] *Id.*

[129] *Id.*

[130] *Id.* at *6.

[131] Mr. Boone stood on the bridge for approximately three hours before jumping. ECF 77-1 (Proposed Am. Compl.) ¶ 50.

[132] *Id.* ¶ 41.

[133] *See Harrison v. City of Lancaster*, No. 20-01879, 2021 WL 1174562, at *3 (E.D. Pa. Mar. 29, 2021) (quoting *Rivas v. City of Passaic*, 365 F.3d 181, 197 (3d Cir. 2004)).

[134] *See id.* ("The proper standard falls somewhere in the middle – the plaintiff must be a 'foreseeable victim,' either individually or as 'a member of a discrete class of persons subjected to the potential harm brought about by the state's actions.'" (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 242 (3d Cir. 2008))).

[135] *See, e.g.*, 77-1 (Proposed Am. Compl.) ¶¶ 53–56, 60, 114–16.

[136] *Id.* ¶¶ 64–65.

[137] *Id.* ¶¶ 115–16.

[138] *McCain v. Episcopal Hosp.*, 350 F. App'x 602, 604 (3d Cir. 2009); *see also Hearst v. Mason*, No. 11-304, 2014 WL 1203269, at *8 (W.D. Pa. Mar. 24, 2014) ("After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived." (quoting *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir.1979))).

[139] *See, e.g.*, *United States v. Joseph*, 730 F.3d 336, 337 (3d Cir. 2013).

[140] *Glover*, 698 F.3d at 146.

[141] *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (first quoting *United States v. Raines*, 362 U.S. 17, 22 (1960) and *McGowan v. State of Md.*, 366 U.S. 420, 429 (1961); then citing C. ANTIEAU, FEDERAL CIVIL RIGHTS ACTS: CIVIL Practice § 31 (1971)).

[142] ECF 77-1 (Proposed Am. Compl.) ¶¶ 149–56. Ms. Brookins asserts the wrongful death claim on behalf of her son and in her individual capacity. We only consider the proposed wrongful death claim to the extent she brings it as administratrix of Mr. Boone's estate, as "an action for wrongful death shall be brought only by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death." Pa. R. Civ. P. No. 2202(a).

[143] *See White v. Dauphin Cnty.*, No. 22-1241, 2024 WL 3046718, at *10 (M.D. Pa. June 18, 2024) ("[W]ithout an underlying tort, 'there can be no wrongful-death or survival action.'" (quoting *McCracken v. Fulton Cnty.*, No. 19-1063, 2020 WL 2767577, at *10 (M.D. Pa. May 28, 2020))).

[144] *Becker v. Carbon Cnty.*, 177 F. Supp. 3d 841, 847 (M.D. Pa. 2016) (quoting *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 271 (3d Cir. 2006))

[145] *Id.* at 847–48 (quoting *Miller*, 463 F.3d at 271).

[146] ECF 77-1 (Pl.'s Memo) at 11.

[147] *Valentino v. Phila. Triathlon, LLC*, 150 A.3d 483, 499 n.11 (Pa. Super. Ct. 2016).

[148] *Dubose*, A.3d at 645.

[149] *Moyer v. Berks Heim Nursing Home*, No. 13-4497, 2014 WL 1096043, at *3 (E.D. Pa. Mar. 20, 2014) (describing the "disagreement among the judges of this district" but denying motion to dismiss section 1983 wrongful death claim); *see also Alexander v. Fair Acres Geriatric Ctr.*, 678 F. Supp. 3d 639, 648 (E.D. Pa. 2023) (concluding plaintiff could not assert a section 1983 wrongful death action); *Massey v. Fair Acres Geriatric Ctr.*, 881 F. Supp. 2d 663, 669 (E.D. Pa. 2012) (same).

[150] *Becker*, 177 F. Supp. 3d at 853 (citing *DeJesus v. City of Lancaster*, No. 14–3477, 2015 WL 1230319, at *3 (E.D.Pa. Mar. 17, 2015).

[151] *Id.* (citing *O'Malley*, 477 F.2d at 788).

[152] *Id.* at 847 (quoting *Miller*, 463 F.3d at 271).

[153] *Amato v. Bell & Gossett*, 116 A.3d 607, 625 (Pa. Super. Ct. 2015).

[154] *Id.*

[155] *Kaufman v. Jetson Elec. Bikes, LLC*, No. 22-3765, 2024 WL 66036, at *3 (E.D. Pa. Jan. 5, 2024) (quoting *Rickard v. Am. Nat'l Prop. & Cas. Co.*, 173 A.3d 299, 305 (Pa. Super. Ct. 2017)).

[156] *See Amato*, 116 A.3d at 626.